Leroy **WEATHERS**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 18202.

United States Court of Appeals Ninth Circuit.

Sept. 16, 1963.

Rehearing Denied Dec. 23, 1963.

Jack H. Friedenthal, Stanford, Cal., for appellant.

Cecil F. Poole, U. S. Atty., and Robert E. Woodward, Asst. U. S. Atty., Sacramento, Cal., for appellee.

Before BARNES and DUNIWAY, Circuit Judges, and KUNZEL, District Judge.

KUNZEL, District Judge.

Following trial by jury, appellant was convicted on two counts for violation of Section 174, Title 21 U.S.C.A.: the first, concealment of heroin; and the second, for the sale and facilitating the sale of heroin.

Appellant contends that the trial court erred in reserving its ruling on a motion for judgment of acquittal at the conclusion of the Government's case in chief, and further contends that the sentence imposed was based upon the trial Judge's unjustified observation that he believed appellant caused perjury to be committed at the trial.

Appellant argues that the motion for judgment of acquittal should have been granted and that the failure to rule upon it when made was prejudicial in that defense counsel was probably misled by the court's action into believing that it was desirable to introduce evidence to convince the court that the motion should be granted. Appellant states that having been misled, defense counsel introduced testimony of an alleged alibi which backfired, and having proceeded with his case it gave the Government the opportunity to introduce evidence in rebuttal which convinced the jury of defendant's guilt.

Although it has been held to be error for a trial court to reserve its ruling on a motion for acquittal upon conclusion of the Government's case,[1] such a holding is not applicable here.

The transcript reveals that the court reserved its ruling prior to the time the Government had completed its case. In response to objection by defense counsel to the introduction of the heroin involved on the ground that the Government had not proved its chain of custody in the hands of Government Agents, the following proceedings took place:

"MR. WOODWARD: * * * May we request permission to leave it open as to that portion?

"THE COURT: To establish the continuity?

"MR. WOODWARD: Yes sir. Other than that, we rest.

"THE COURT: All right.

"Mr. Carson, do you have a motion to make at this time?

"It is understood that the Government's case is closed except that they shall be permitted the privilege of putting on a witness—I am not saying that they can establish the continuity. I don't know whether they can. But at least we will give them the opportunity to bring in a witness who will attempt, I presume, to establish that continuity.

"Now, with that in mind, you may proceed with your case, or your statement, or any motions that you may have to offer at this time.

"MR. CARSON: Yes. I move for a judgment of acquittal at this point.

"THE COURT: Your motion will be taken under submission and a ruling will be made on it subsequently in the case.

"Now, you may proceed.

"MR. CARSON: I'd like to call Mr. John Green."

1. Jackson v. United States, 250 F.2d 897 (5th Cir., 1958).

The testimony relative to the chain of custody was not introduced by the Government until after the defense had rested, and at the conclusion of the Government's rebuttal evidence the court denied the motion upon which the ruling had been reserved. Defense counsel did not object to this procedure nor did he make a further motion at the close of the case. A fair inference is that the reason that the court reserved its ruling was the Government's failure, in its case in chief, to have proved the chain of custody.

Assuming that it is error to reserve ruling on a motion for acquittal at the conclusion of the Government's case, and assuming the error was not waived by the introduction of evidence in defense, such error could not possibly be considered prejudicial unless the evidence was such that the court should have granted the motion. Prejudice does not exist here.

The Government introduced the following evidence in its case in chief. On the morning of October 6, 1961, one Hunt purchased from the appellant for his own use, a spoon of heroin, and made arrangements with appellant to buy some additional heroin later in the day. In the afternoon Hunt became a special Government employee. Hunt had a telephone conversation with one Makey who had been with appellant at the morning purchase, and made arrangements to meet him for the purpose of purchasing the additional heroin. Hunt was furnished with $100 by the Narcotic Agents and searched before his meeting with Makey. Under surveillance of the agents, Hunt met Makey and appellant at 4:30 P.M. near the corner of Sixth and L streets in Sacramento. Hunt, Makey and appellant held a brief meeting during which Hunt told appellant and Makey that he only had enough money to purchase two spoons. Appellant told Hunt to wait about 10 minutes and Makey would bring the narcotics. In about 15 minutes Makey came back alone and gave Hunt the heroin and Hunt gave Makey the $100. Then Makey and Hunt walked a few feet from where the exchange took place, to the corner where they met appellant. Hunt testified he saw Makey give appellant the money which he had given to Makey in exchange for the heroin. Hunt returned to the Narcotics Agents who had him under surveillance, with the narcotics in his mouth.

If it can be said that, passing upon the foregoing direct and circumstantial evidence produced during the Government's case in chief, reasonable minds could have found that the evidence excluded every reasonable hypothesis but that of guilt, then the court should have denied the motion. Bolen v. United States, 303 F.2d 870, 874 (9th Cir., 1962). In our opinion the evidence met this test when the statutory inference as to unexplained possession of the narcotics is applied,[2] plus the evidence of the chain of custody.

The evidence introduced by the Government in its case in chief closely parallels the facts in Cellino v. United States, 276 F.2d 941 (9th Cir., 1960), where this court affirmed a conviction, except in the instant case there is the added direct evidence that the purchase money received by Makey was passed to appellant. Appellant argues that there is no evidence which would allow for the invocation of the statutory inference arising from possession, relying upon the cases of Arellanes v. United States, 302 F.2d 603 (9th Cir., 1962), cert. denied 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962); Williams v. United States, 290 F.2d 451 (9th Cir., 1961); United States v. Mills, 293 F.2d 609 (3rd Cir., 1961). However, in none of these cases were the defendants as intimately connected with the transaction as was the appellant here.

■ Appellant was sentenced to serve 15 years on each of two counts to run concurrently and to run concurrent with a previous 2-year sentence. The maximum sentence which could have been im-

---

2. Proof of possession of the narcotic drug avoids the necessity of proving both illegal importation and defendant's knowledge thereof. Section 174, Title 21 U.S.C.A.; Cellino v. United States, 276 F.2d 941, 942 (9th Cir., 1960).

posed is 40 years, and the minimum 5 years. Although at the time of sentencing the court expressed the opinion that appellant had induced perjury at the trial, the record does not support appellant's contention that the sentence was based upon this observation. In reading the court's remarks it is apparent that the pre-sentence report was carefully analyzed and considered. The court commented that appellant was not an addict and that he trafficked in narcotics purely for personal gain and profit, and that he had spent 13 out of the last 16 years in jail for some serious offenses and that there was previous narcotic involvement. After appellant denied inducing the perjury, and before sentence, the court stated:

> "Well, your record is so long, Mr. Weathers, the offenses with which you have been charged, there are so many of them that are very serious offenses where other people are involved, where injury could result, you have been involved in narcotics before and there's absolutely nothing in your record or your statement or your conduct that speaks favorably for you."

The truth of the foregoing remarks by the court were not challenged at the trial or here. Considering the nature of the offense and defendant's background, the sentence does not appear to have been based upon a false premise.

This court has consistently held that Appellate Courts have no control over a sentence which is within the statutory limits. Gallego v. United States, 276 F.2d 914, 918 (9th Cir., 1960). See Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). The part of the opinion concerning the sentence should not be understood as in any way contravening the holding in the Gallego case. We have reviewed the sentencing proceedings only because of appellant's insistence that the sentence was based upon a false premise. Neither should it be implied because of this re-view, that we believe the trial Judge was not justified in commenting upon the alleged perjury.

Accordingly, the judgment is affirmed.