Electronically Filed
Supreme Court
SCWC-16-0000284
25-JUN-2020
08:02 AM

IN THE SUPREME COURT OF THE STATE OF HAWAIʻI

---o0o---

CAROL L. McKENNA,
Petitioner/Plaintiff-Appellant,

vs.

ASSOCIATION OF APARTMENT OWNERS OF ELIMA LANI,
a Hawaiʻi nonprofit corporation; CERTIFIED MANAGEMENT, INC.,
dba Certified Hawaiʻi; WELLS FARGO BANK, N.A.; and ROSS ANDALORO,
Respondents/Defendants/Cross-Claim Defendants/
Cross-Claimants-Appellees,

and

GEOFFREY S. KIM and HAWAIIAN ISLES ADJUSTING CO., LLC,
a Hawaiʻi limited liability company;
Respondents/Defendants/Cross-Claimants/Cross-Claim Defendants.

SCWC-16-0000284

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000284; CIV. NO. 11-1-627K)

JUNE 25, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY NAKAYAMA, J.

This case arose from settlement negotiations between

Petitioner/Plaintiff-Appellant Carol L. McKenna (McKenna) and Respondents/Defendants-Appellants Association of Apartment Owners of Elima Lani, Certified Management, Inc., Wells Fargo Bank, and Ross Andaloro (collectively, Defendants) relating to a dispute between the parties about water and mold damage to McKenna's condominium. At the close of an October 21, 2014 settlement conference, at which McKenna was represented by counsel, the circuit court and the parties acknowledged that the parties had reached a settlement and went on the record to identify the "essential terms" of the agreement. Thereafter, McKenna refused to sign the settlement documents. McKenna has since represented herself pro se.

On November 5, 2014, Respondents filed a motion to enforce the settlement agreement (Motion to Enforce) in the Circuit Court of the Third Circuit (circuit court) and attached a proposed written settlement agreement and stipulation. McKenna opposed the Motion to Enforce.

After a November 24, 2014 hearing on the Motion to Enforce, McKenna filed a Motion for an Evidentiary Hearing. The circuit court denied McKenna's Motion for an Evidentiary Hearing and issued an order granting Defendants' Motion to Enforce.

In its order, the circuit court found that the

2

parties had entered into a binding settlement agreement at the settlement conference but that the proposed written settlement agreement contained terms beyond those that had been agreed to at the settlement conference. The circuit court therefore struck those terms and created a revised settlement agreement. The circuit court entered a final judgment on March 10, 2016, dismissing all of McKenna's claims with prejudice.

The Intermediate Court of Appeals (ICA) affirmed the circuit court's final judgment. McKenna filed an application for writ of certiorari.

Genuine issues of material fact exist as to whether the parties reached a valid settlement agreement and as to which terms the parties agreed to at the settlement conference. As such, pursuant to the ICA's holding in Miller v. Manuel, 9 Haw. App. 56, 64, 828 P.2d 286, 292 (App. 1991), the circuit court should have granted McKenna's motion for an evidentiary hearing to resolve these issues. Instead, the circuit court revised the proposed settlement agreement itself before issuing an order enforcing the revised settlement agreement.

We therefore vacate the ICA's September 17, 2018 Judgment on Appeal. We remand the case to the circuit court with instructions that the circuit court hold an evidentiary

hearing and for further proceedings consistent with this opinion.

## I. BACKGROUND

At the outset of this dispute, McKenna was the owner and occupier of a condominium unit at Elima Lani in South Kohala, Hawai'i. Association of Apartment Owners of Elima Lani Condominiums, a Hawai'i Nonprofit Corporation (AOAO) was the governing body of the condominium complex that includes McKenna's condominium. Certified Management, Inc. dba Certified Hawaii (Certified Management), was the managing agent of the Elima Lani condominiums. Ross Andaloro owned the condominium above McKenna's. Wells Fargo Bank, N.A. was the previous owner of Ross Andaloro's condominium.[1]

In June 2010, McKenna returned home to discover extensive water damage in her condominium, which appeared to have been caused by a leak in the unit above hers (Ross Andaloro's unit). McKenna alleged that she contacted AOAO to address the leak, but that AOAO did not endeavor to fix the leak or enable McKenna to do so. Several months later, McKenna identified mold in her condominium and she began to

---

[1] McKenna claims that "[d]uring the period of time that the leak in [the] Andaloro unit was causing water to accumulate in the ceiling cavities of [McKenna's] unit . . . the Andaloro unit was owned by or in the possession of Wells Fargo" and that during that time, Wells Fargo was attempting to sell the unit to Andaloro, who at some point did purchase the unit.

suffer symptoms associated with exposure to contaminants. McKenna claimed that she was forced to vacate her condominium due to the mold contamination. On December 20, 2011, McKenna filed a Complaint in the circuit court against Defendants alleging, <u>inter alia</u>, negligence and misrepresentation.

Over the following two years, the parties engaged in two mediation sessions and arbitration.

## A. Circuit Court Proceedings[2]

### 1. Settlement Conference Terms

On October 21, 2014, McKenna attended a settlement conference with Defendants. At the close of the conference, the parties went on the record, acknowledged that they had reached a settlement, and described the "essential terms" of the agreement. McKenna agreed to the terms in the following exchange:

> THE COURT: Okay. And my understanding is that the parties have reached a settlement agreement in this case. That the terms of the settlement include – the essential terms of the settlement agreement are that the defendants shall pay plaintiff $60,000 in cash. The Association of Apartment Owners of Elima Lani will also release any lien and outstanding amounts owed by Ms. McKenna to the association.
> That there be – it's a general-damages-only release, and that the parties will execute a settlement agreement with mutual releases and standard settlement terms and a dismissal of the case.
> Have I accurately stated the settlement agreement from the perspective of the plaintiff, [McKenna's counsel]?

---

[2] The Honorable Melvin H. Fujino presided over entry of the Final Judgment. The Honorable Elizabeth A. Strance presided over all other proceedings.

[MCKENNA'S COUNSEL]: Yes, your Honor.

THE COURT: And Ms. McKenna, do you agree to the terms of the settlement?

MS. MCKENNA: Yes.

THE COURT: Okay. And [Wells Fargo's counsel], have I accurately stated the settlement agreement from the perspective of your client, Wells Fargo?

[WELLS FARGO'S COUNSEL]: Yes, your Honor.

THE COURT: And do you have authority on behalf of your client to enter into the settlement agreement?

[WELLS FARGO'S COUNSEL]: I do, your Honor.

THE COURT: Okay. And [AOAO's counsel], have I accurately stated the settlement agreement from the perspective of the association and of Certified Management?

[AOAO'S COUNSEL]: One clarification, your Honor. It's a dismissal with prejudice.

THE COURT: Yes.

The parties agreed that Wells Fargo's counsel would draft a written settlement agreement reflecting the terms described and circulate it within fourteen days. All parties stipulated that the circuit court could retain jurisdiction to enforce the settlement agreement.

## 2. The Proposed Settlement Agreement

Wells Fargo's counsel thereafter circulated a proposed settlement agreement to the parties, including McKenna's attorney. McKenna instructed her attorney not to sign anything on her behalf, as she did not agree to the settlement terms. McKenna did not sign the settlement

documents.

McKenna's attorney filed a motion to withdraw as counsel on October 27, 2014, citing McKenna's refusal to sign settlement documents. The circuit court granted the motion. McKenna has proceeded pro se since her counsel's withdrawal.

Defendants filed their Motion to Enforce on November 5, 2014. Defendants requested that the motion be granted

> and that an Order enter herein enforcing the terms and conditions of the settlement reached by Plaintiff and the Defendants at the Settlement held on October 21, 2014 and requiring Plaintiff to execute the Settlement Agreement and Stipulation and or otherwise permitting the Clerk of Court, pursuant to Rule 10(e) of the Rules of the Circuit Courts of the State of Hawaii, to sign the Stipulation . . . .

On November 14, 2014, McKenna filed an opposition to Defendants' Motion to Enforce. McKenna attached a declaration to her opposition in which she claimed that, essentially, her verbal assent to the settlement conference terms was invalid. McKenna asserted,

> I was told during the settlement conference multiple times by [the circuit court] "It is not about the merits of the case, you cannot afford $100,000 to go to trial." During the same conversation I replied to [the circuit court] directly this case is well documented and I feel confident presenting emails and professional reports to professional witnesses pro-se. [The circuit court] replied to me I could not afford the professional witnesses.

McKenna also stated that "[t]owards the end of the settlement conference when we were between $30-$60K, I was feeling sick [and] asked to leave and was told no, I could not by [the circuit court]."

7

The circuit court held a hearing on Defendants' Motion to Enforce on November 24, 2014. At the hearing, McKenna argued that there had been no meeting of the minds at the settlement conference, that the settlement agreement lacked essential terms about repairing her condominium, that the proposed settlement agreement contained terms she had not agreed to, and that the settlement was invalid because the parties did not attend the settlement conference but sent attorneys in their stead. After confirming that each Defendant had given full settlement authority to their attorney, the circuit court granted the Motion to Enforce, finding that there was a meeting of the minds as to the essential terms of the settlement. However, the circuit court found that the settlement agreement contained terms beyond what had been agreed to at the settlement conference. The circuit court stated:

> So the court will grant the motion to enforce settlement. With respect to the specific settlement agreement, the court will take the matter under advisement as to what, uh, it will, uh, allow a clerk to enter. Um, the court will not be going outside the terms of the settlement. Uh, there were no agreements regarding non-disparagement and things of that ilk.
> So the court will look carefully at the, uh, settlement agreement and/or, uh, issue something separate from, uh, what is submitted to the court. But with respect to the essential terms, the court finds that they were agreed upon and will, uh, grant the motion to enforce settlement.

Defendants submitted a proposed order granting their

Motion to Enforce. McKenna filed a motion objecting to the proposed order. Therein, McKenna claimed that the terms of the proposed settlement agreement were different from those she agreed to at the settlement conference.

In her motion, McKenna reiterated that, for several reasons, her assent to the settlement conference terms was invalid. For example, McKenna argued that the circuit court compelled McKenna to settle when the circuit court "improperly introduced [the] confidential Mediation amount as a starting point for settlement negotiations . . . said [McKenna] could not leave when [she] asked to go [and] repeatedly insisted [McKenna] could not afford to go to trial or afford [] expert witnesses." McKenna also contended that she had not been present at the drafting of the proposed settlement agreement, that she was "coerced, and under duress" at the settlement conference, and that she "never agreed at the October 21, 2014 Settlement Conference to all the Material and Essential Terms and Conditions as described and enumerated in the [proposed settlement agreement][.]" Defendants opposed the motion.

McKenna filed a Motion for an Evidentiary Hearing on December 2, 2014. Therein, McKenna argued that genuine issues of material fact were present and that as the circuit court should view motions to enforce settlement agreements by the

9

same standard as motions for summary judgment, she was entitled to an evidentiary hearing.

On February 6, 2015, the circuit court held a hearing on McKenna's Motion for an Evidentiary Hearing. At the hearing, the circuit court found that the motion was essentially a motion to reconsider the court's oral grant of Defendants' motion to enforce, for which an order had not yet been issued. Accordingly, the circuit court denied McKenna's Motion for an Evidentiary Hearing:

> The Court will deny the motion to order evidentiary hearing, finding that the motion is essentially a motion to reconsider the motion to enforce settlement for which an order has not been issued.
> To the extent that the parties are requesting further ruling of the Court, the Court finds that the settlement conference that was held on October 21st, 2014, was an arm's length settlement conference.
> All parties were represented by counsel. The Court satisfied itself that all counsel had authority of their clients, if their client was not here, that they had the appropriate authority to act. The Court was satisfied that the defense counsel had authority.
> To that end then, the Court conducted extensive settlement conferences in which Ms. McKenna was a full and active participant [] with her attorney. As the result of that lengthy settlement conference, a settlement agreement was reached, the material terms of which were placed on the record.
> Based upon the record before it, the Court can find no misconduct on the part of any defense counsel based upon their conduct and representations that were made during the course of the settlement conference and in terms of their conduct since.
> To the extent that no settlement agreement has been executed, that [sic] Court finds that that lays squarely in the lap of Ms. McKenna. Ms. McKenna indicated, shortly after the settlement conference, her intention not to execute a settlement agreement. As a result of that, her attorney filed a motion to withdraw as counsel. That motion was granted.
> Prior to the withdrawal of counsel, it would have been inappropriate, and that would have been attorney misconduct had either, any counsel attempted to contact

10

> and negotiate directly with Ms. McKenna regarding any matter relating to settlement. In large part, the motion to order evidentiary hearing is attempts [sic] to either reargue the underlying merits of the case, which Ms. McKenna gave up in reaching a settlement in this case, or were previously covered during the motion to enforce settlement.
> For all of those reasons, the motion to order evidentiary hearing is denied.

The circuit court entered a written order denying McKenna's Motion for an Evidentiary Hearing on March 4, 2015 (Order Denying Motion for Evidentiary Hearing).

### 3.  Revised Settlement Agreement Terms

On February 6, 2015, the circuit court entered an order granting Defendants' Motion to Enforce (Order Granting Motion to Enforce).  The circuit court found that "[t]he parties herein entered into a binding settlement agreement during a settlement conference held on October 21, 2014."  The circuit court also found that "[t]he [proposed settlement agreement] submitted to [McKenna] contains terms beyond the material terms of the Settlement Agreement."  The circuit court accordingly struck the following provisions of the Settlement and Release Agreement:

> a.   Paragraph 4 Attorneys' Fees: All language after "The Settling Parties shall bear their respective attorneys' fees and costs incurred in the Lawsuit.
> b.   Paragraph 5, Non-Disparagement shall be stricken in its entirety.
> c.   Paragraph 6, Release by Plaintiff, [] all language after the word "Lawsuit".
> d.   Paragraph 8, Release of Unknown Claims shall be stricken in its entirety.
> e.   Paragraph 11, Indemnification [] all language after SAC is stricken.
> f.   Paragraph 12(c) Acknowldgment [sic]. Inasmuch as

11

> Plaintiff has refused to participate in the drafting of the Settlement Agreement, she cannot be deemed drafter.
> g.   Paragraph 13. Tax Consequences shall be stricken in its entirety.
> h.   Paragraph 18, Further Assurances shall be stricken in its entirety.

The circuit court ordered that Defendants revise the proposed settlement agreement in conformity with the stricken provisions (revised settlement agreement) and submit it to the circuit court for execution by the Clerk of Court.  The circuit court also ordered that Defendants submit the stipulation for dismissal with prejudice to the circuit court for execution by the Clerk of Court.  Defendants submitted the revised settlement agreement and the stipulation for dismissal.  The case was dismissed on March 16, 2015.[3]  The circuit court entered a Final Judgment in favor of Defendants on March 10, 2016.

**B.  ICA Proceedings**

McKenna filed a notice of appeal on March 31, 2016. McKenna appealed: (1) the February 6, 2015 Order Granting Motion to Enforce; (2) the March 4, 2015 Order Denying Motion for an Evidentiary Hearing; and (3) the circuit court's March 10, 2016 Final Judgment.  McKenna argued, inter alia, that the

---

[3]    McKenna filed various unsuccessful motions attempting to appeal the stipulation for dismissal and restore the proceedings.  McKenna also filed an appeal to the ICA, which was dismissed for lack of appellate jurisdiction.  Meanwhile, McKenna's former counsel moved for distribution of settlement proceeds, which the circuit court granted.

12

settlement agreement was not executed voluntarily, that the circuit court rewrote the settlement agreement such that it was materially different than the settlement agreement originally drafted by Defendants, and that there was no mutual assent or meeting of the minds at the settlement conference.

In the Defendants' answering brief, they argued that there was a meeting of the minds as to the terms of the settlement agreement and that McKenna suffered no prejudice by her failure to personally participate in drafting a written settlement agreement. Defendants also argued that the circuit court used its "inherent power to modify the written agreement" and "revised the written settlement agreement to delete provisions not expressly agreed upon at the settlement conference."

On June 29, 2018, the ICA entered a Summary Disposition Order (SDO) affirming the circuit court. McKenna v. Ass'n of Apartment Owners of Elima Lani, NO. CAAP-16-284, 2018 WL 3199233 (App. June 29, 2018). The ICA reasoned that as McKenna "does not dispute that the October 21, 2014 Settlement Offer was orally accepted by [her] at that proceeding," there was "no indication that McKenna did not intend to be bound to the resulting judgment or dismissal with prejudice. Therefore, the agreement was entered into

13

voluntarily and there was a meeting of the minds, and a binding settlement agreement was formed." The ICA further held that the revised settlement agreement "did not materially change the essential terms agreed to at the Settlement Conference, and in fact, included several edits to assure that the agreement was not outside the scope of what was discussed."

The ICA entered its Judgment on Appeal on September 17, 2018. McKenna filed an application for writ of certiorari.

## II. STANDARD OF REVIEW

A motion to enforce a settlement agreement is reviewed by the same standard as a motion for summary judgment. Miller, 9 Haw. App. at 64, 828 P.2d at 292. We review the grant or denial of a motion for summary judgment "de novo under the same standard applied by the circuit court." Dairy Rd. Partners v. Island Ins. Co., 92 Hawai‘i 398, 411, 992 P.2d 93, 106 (2000). Summary judgment is appropriate if "there is no genuine issue as to any material fact and [] the moving party is entitled to judgment as a matter of law." Hawai‘i Rules of Civil Procedure (HRCP) Rule 56(c). Accordingly, granting a motion to enforce a settlement agreement is appropriate if "there [is] no genuine issue of

14

material fact and [] as a matter of law the parties [] entered into a valid compromise agreement." Miller, 9 Haw. App. at 64, 828 P.2d at 292.

### III.  DISCUSSION

McKenna raises the following questions on application for writ of certiorari:

> 1.  Whether the ICA gravely erred in holding that McKenna had a meeting of the minds as to the October 21, 2014 original agreement?
>
> 2.  Whether the trial court's revisions of the original draft agreement and enforcement of the new and revised court ordered agreement was proper over McKenna's objection and lack of consent.

We interpret McKenna's application as arguing that the circuit court erred in enforcing the revised settlement agreement without granting McKenna's motion for an evidentiary hearing, in light of the genuine issues of material fact expressed in McKenna's questions on certiorari.[4]  We agree that McKenna raises genuine issues of material fact as to the validity of her assent to the settlement agreement and as to the terms agreed to at the October 21, 2014 settlement.

---

[4]    While McKenna does not explicitly contend that the circuit court improperly denied her motion for an evidentiary hearing, McKenna references the circuit court's erroneous failure to conduct an evidentiary hearing multiple times in her application.  Moreover, McKenna challenged the order denying her motion for an evidentiary hearing in her August 7, 2016 Opening Brief to the ICA.  Because McKenna is a pro se litigant, we construe her arguments liberally.  See Waltrip v. TS Enters., Inc., 140 Hawaiʻi 226, 231, 398 P.3d 815, 820 (2016).  Accordingly, we construe McKenna's argument to be that the circuit court erroneously denied her motion for an evidentiary hearing.  We consider the issue preserved.

15

Because the standard for granting a motion to enforce a settlement agreement is the same standard that governs the grant or denial of a motion for summary judgment, the circuit court erred in granting Defendants' Motion to Enforce when genuine issues of material fact exist. The evidentiary hearing requested by McKenna will allow a full record to be developed to answer the questions raised in McKenna's application.

In Miller, the ICA held that an order granting a motion to enforce a settlement agreement is reviewed by the same standard as that of a motion for summary judgment. 9 Haw. App. at 64, 828 P.2d at 292. As such, "the question is whether the evidence presented to the trial court indicated that there was no genuine issue of material fact and that as a matter of law the parties had entered into a valid compromise agreement." Id. The ICA further held that the circuit court must hold an evidentiary hearing if genuine issues of material fact exist regarding the validity of a settlement agreement. Id. at 64-65, 828 P.2d at 292. If, at the hearing, the circuit court determines that there was no valid settlement agreement, the circuit court should set the case for trial on the merits. Id. at 71, 828 P.2d 295.

Miller involved a contested settlement agreement

16

concerning a dispute to quiet title to interests in real property on the island of Hawai'i. Id. at 59, 828 P.2d at 289. There, an agreement was reached at a settlement conference, and a hand-written memorandum was executed by all parties. Id. at 59-60, 828 P.2d at 289. Subsequently, certain parties filed a motion to enforce settlement and attached a copy of the hand-written agreement and a stipulation, the terms of which differed from those of the agreement. Id. at 60, 828 P.2d at 290. The motion requested that the court enter an order approving the stipulation, or in the alternative, enter a judgment enforcing the agreement's terms. Id. The circuit court granted the motion and entered an order enforcing certain terms of the stipulation and the agreement. Id. at 61, 828 P.2d 290. The parties contesting the stipulation filed a motion asking the court to reconsider the order and to hold an evidentiary hearing, which the circuit court later denied. Id.

In vacating the circuit court's decision, the ICA concluded that the enforcement of a settlement agreement must be treated like a motion for summary judgment. Id. at 64, 828 P.2d at 292. The ICA stated,

> [S]ince very important rights are at stake in most cases, appellate courts must strive to ensure that the purported compromise agreement sought to be enforced is truly an agreement of the parties. A motion to enforce a settlement contract is neither ordinary nor

17

> routine . . . . Its relative simplicity is a concession to the policy favoring settlements, but only to the extent that full and fair opportunities to prove one's points are substantially preserved.

Id. at 63, 828 P.2d at 291 (internal quotations omitted). Evaluating the settlement agreement by a summary judgment standard, the ICA held that genuine issues of material fact remained and that the circuit court should have set the case for trial on the merits or ordered an evidentiary hearing on the validity of the settlement agreement. Id. at 64-65, 828 P.2d at 292. Noting that discrepancies existed between the hand-written agreement terms and the stipulation terms, the ICA held that those discrepancies per se created a genuine issue as to whether there was a meeting of the minds regarding the terms of either document. Id. at 67, 828 P.2d at 293.

We adopt the ICA's analysis in Miller because it is consistent with Hawaiʻi law and that of other jurisdictions, and because public policy favors this approach. "[S]ummary judgment is proper where the moving party demonstrates that there is no genuine issue of material fact and it is entitled to judgment as a matter of law." Kaneohe Bay Cruises, Inc. v. Hirata, 75 Haw. 250, 258, 861 P.2d 1, 6 (1993). In the context of summary judgment, if a trial court finds that genuine issues of material fact exist, summary judgment is denied and the parties proceed to trial on the merits. HRCP

18

Rule 56(d). Because enforcing a disputed settlement similarly involves summarily adjudicating a case, it is consistent with our courts' summary judgment practices that the trial court deny a motion to enforce a settlement where genuine issues of material fact exist surrounding the settlement. In this matter, because McKenna requested an evidentiary hearing and not an immediate trial, the circuit court should have, at a minimum, held an evidentiary hearing on whether a valid settlement agreement existed. If the circuit court found that no valid settlement agreement existed, it then could have proceeded to a trial on the merits of the underlying lawsuit.

Other jurisdictions also treat motions to enforce settlement as motions for summary judgment and have held that courts are required to hold an evidentiary hearing to resolve genuine issues of material fact before granting a motion for summary judgment. For example, the Nevada Supreme Court held in Resnick v. Valente, 637 P.2d 1205, 1206 (Nev. 1981), that an alleged settlement agreement could not be summarily reduced to judgment upon the motion of one party without an evidentiary hearing. The federal courts have also adopted this practice. The United States Court of Appeals for the Ninth Circuit stated that "[w]here material facts concerning the existence or terms of an agreement to settle are in

19

dispute, the parties must be allowed an evidentiary hearing." Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987) (emphasis in original).

We adopt the process of allowing an evidentiary hearing instead of immediately scheduling the matter for trial on the underlying claims based on the public policy supporting the enforcement of settlement agreements. See State Farm Fire and Cas. Co. v. Pac. Rent-All, Inc., 90 Hawai'i 315, 323, 978 P.2d 753, 761 (1999). This public policy position underpins the procedural distinction between the denial of a motion to enforce a settlement and the denial of a motion for summary judgment. Whereas, when genuine issues of material fact preclude the grant of summary judgment, the circuit court must set the case for trial on the merits, see HRCP Rule 56(d), when genuine issues of material fact as to the terms or validity of a settlement agreement preclude the enforcement of that agreement, the circuit court may hold an evidentiary hearing to address those genuine issues in lieu of proceeding directly to trial on the merits. See Miller, 9 Haw. App. at 63, 828 P.2d at 291. Because the policy supporting settlement should not be invoked at the expense of depriving litigants of the full and fair opportunity to have a trial on the merits, however, the circuit court should set a matter for trial on

20

the merits if it concludes at an evidentiary hearing that the parties did not enter into a valid settlement agreement.

In light of the foregoing, we hold that a trial court errs in granting a motion to enforce a settlement agreement when genuine issues of material fact exist regarding the existence and terms of the settlement agreement. See id. at 64, 828 P.2d at 292. We further hold that the circuit court must, at minimum, hold an evidentiary hearing as to those genuine issues of fact.

As settlement agreements are contracts, Dowsett v. Cashman, 2 Haw. App. 77, 83, 625 P.2d 1064, 1068 (App. 1981), however, the traditional requirements for contract formation must be met for an enforceable settlement to exist. Carson v. Saito, 53 Haw. 178, 182, 489 P.2d 636, 638 (1971) ("We have held that 'the parties not having reached agreement upon all of the essential and material terms, conditions or covenants of the agreement, there was failure of mutual assent or a meeting of the minds and therefore no binding contract.") At the evidentiary hearing requested by McKenna, the circuit court must therefore determine whether there was a meeting of the minds as to essential and material terms.[5]

---

[5]     Pursuant to Section 204 of the Restatement (Second) of Contracts (1981), however:

(continued. . .)

Here, McKenna adequately refuted Defendants' allegation that there was no genuine issue of material fact. "The moving party in a summary judgment proceeding has the obligation to show . . . that there is no genuine issue of material fact." Miller, 9 Haw. App. at 65, 828 P.2d at 292. Once the moving party has satisfied its burden, "the opposing party must come forward, through affidavit or other evidence, with specific facts showing that there is a genuine issue of material fact." Id. However, "the alleged facts and the inferences logically drawn therefrom must be viewed in the light most favorable to the non-moving party." Id.

Defendants' Motion to Enforce simply alleged that the parties entered into a binding settlement agreement at the settlement conference and attached the proposed settlement agreement and stipulation for dismissal. McKenna attached a declaration to her opposition to Defendants' Motion to Enforce asserting that (1) the proposed settlement terms were different than the settlement conference terms, and that, (2) due to certain factors, her verbal assent to the settlement

---

When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court.

22

conference terms was invalid.

McKenna argues, and we agree, that viewed in the light most favorable to McKenna, there exist genuine issues of material fact regarding the existence and terms of the settlement agreement. First, McKenna raises a genuine issue of material fact as to the validity of her assent to the settlement conference terms. "Whether or not the parties entered into an agreement is essentially a question of fact." Island Directory Co. v. Iva's Kinimaka Enters., Inc., 10 Haw. App. 15, 23, 859 P.2d 935, 940 (App. 1993). In McKenna's declaration attached to her opposition to Defendants' Motion to Enforce, McKenna claimed that, essentially, her verbal assent to the settlement conference terms was invalid because she was ill at the settlement conference and was not allowed to leave. She also stated that the circuit court coerced her into settling by repeatedly insisting that she could not afford to go to trial. These claims call into question, and thus demonstrate a genuine issue as to, the validity of McKenna's assent at the settlement conference.

Second, like the discrepancy between the stipulation and agreement alleged in Miller, here the terms of the proposed settlement agreement differed from the settlement conference terms. The proposed settlement agreement contained

23

twelve provisions not placed on the record at the settlement conference: (1) attorneys' fees, (2) warranties and representations, (3) indemnification, (4) acknowledgments, (5) compromise of disputed claims, (6) severability, (7) binding effect, (8) governing law, (9) counterparts, (10) integration clause, (11) time is of the essence, and (12) headings and captions. Defendants argued that these terms are "standard provisions commonly found in settlement agreements." However, the circuit court struck several of the additional provisions, finding that they were beyond what was agreed to at the settlement conference. The difference between the proposed settlement agreement terms and the settlement conference terms evinces a genuine issue as to which terms were explicitly and implicitly agreed to at the settlement conference.

The circuit court acknowledged in its Order Granting Motion to Enforce that the proposed settlement agreement contained terms beyond what the parties agreed to at the settlement conference. Pursuant to the ICA's analysis in Miller, this discrepancy alone creates a genuine issue of material fact. See 9 Haw. App. at 67, 828 P.2d at 293. The circuit court therefore erred in granting Defendants' Motion to Enforce in light of the genuine issue of which terms the

24

parties agreed to at the settlement conference.

As courts are "more indulgent towards the materials submitted by the non-moving party," Miller, 9 Haw. App. at 66, 828 P.2d at 292, McKenna adequately refuted Defendants' showing and demonstrated that genuine issues of material fact exist as to McKenna's assent to the settlement agreement and as to the terms to which the parties agreed at the October 21, 2014 settlement conference. Pursuant to the standard that we now adopt, we hold that the circuit court erred in granting Defendants' Motion to Enforce because genuine issues of material fact exist as to the existence and terms of the original settlement agreement. Rather than granting Defendants' Motion to Enforce, the circuit court should have granted McKenna's motion for an evidentiary hearing.

On remand, the circuit court should hold an evidentiary hearing to address the conflicting facts to determine whether the parties entered into a valid settlement agreement.

## IV.  CONCLUSION

We hold that, as with a motion for summary judgment, the circuit court may not grant a motion to enforce a settlement agreement when genuine issues of material fact remain. Here, McKenna raised genuine issues of material fact

25

regarding her assent to the settlement agreement and the discrepancy between the terms of the revised settlement agreement and the original settlement agreement. The circuit court erroneously denied McKenna's request for an evidentiary hearing, striking certain terms from the proposed settlement agreement and granting Defendants' motion to enforce the settlement agreement.

We vacate the ICA's September 17, 2018 Judgment on Appeal. We remand with instruction that the circuit court hold an evidentiary hearing to address the issues of fact as to the terms and existence of the settlement agreement in further proceedings consistent with this opinion.

| | |
|---|---|
| Carol L. McKenna, petitioner/plaintiff-appellant pro se | /s/ Mark E. Recktenwald |
| | /s/ Paula A. Nakayama |
| Michael C. Bird, Jonathan W.Y. Lai, and Lisa M. Yang and Paul D. Alston and J. Blaine Rogers for respondent/defendant-appellee Wells Fargo Bank, N.A. | /s/ Sabrina S. McKenna |
| | /s/ Richard W. Pollack |
| | /s/ Michael D. Wilson |



26